BRISTOL ENERGY CORPORATION, d/b/a Alexandria Power Associates, Bio–Energy Corporation, Bridgewater Power Company, L.P., Hemphill Power and Light Company, Pinetree Power, Inc., Pinetree Power—Tamworth, Inc., Timco, Inc., and Whitefield Power and Light Company, Plaintiffs, Appellants,

v.

STATE OF NEW HAMPSHIRE PUBLIC UTILITIES COMMISSION, Defendant, Appellee.

BRISTOL ENERGY CORPORATION, d/b/a Alexandria Power Associates, Bio–Energy Corporation, Bridgewater Power Company, L.P., Hemphill Power and Light Company, Pinetree Power, Inc., Pinetree Power—Tamworth, Inc., Timco, Inc., and Whitefield Power and Light Company, Plaintiffs, Appellees,

v.

STATE OF NEW HAMPSHIRE PUBLIC UTILITIES COMMISSION, Defendant, Appellee,

American Hydro, Inc.—Peterborough and Energy Tactics, Inc., Intervenors, Appellants.

Nos. 93–1824, 93–1835.

United States Court of Appeals, First Circuit.

Heard Nov. 5, 1993.

Decided Jan. 18, 1994.

Bryan K. Gould, with whom Robert A. Olson and Brown, Olson & Wilson, P.C. were on brief, for appellants and Peter W. Brown, Daniel W. Allegretti, and Brown, Olson & Wilson, P.C., Concord, NH, on brief for intervenors, appellants.

Harold T. Judd, Sr. Asst. Atty. Gen., with whom Jeffrey R. Howard, Atty. Gen., Concord, NH, was on brief, for appellee.

Susan Tomasky, Jerome M. Feit and Samuel Soopper, Washington, DC, on brief, for Federal Energy Regulatory Commission, amicus curiae.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

BOWNES, Senior Circuit Judge.

Plaintiffs-appellants, a group of power producers, challenge the district court's dismissal of their suit to enjoin defendant-appellee, New Hampshire Public Utilities Commission (PUC), from ordering a disclosure of their business and financial data.[1] PUC requested the information for a study conducted pursuant to section 712 of the federal Energy Policy Act of 1992, 16 U.S.C. § 2621(d)(10). Plaintiffs allege that federal law preempts PUC's inquiries. The district court dismissed the suit for lack of subject matter jurisdiction. Concluding that the case presents a federal question, we find jurisdiction, but affirm the dismissal because plaintiffs failed to state a cognizable claim.

## I.

### Background

Plaintiffs are non-utility power producers known as "qualifying small power production facilities" and "qualifying cogeneration facilities" (collectively "QFs"), see 16 U.S.C. § 796(17)(C), (18)(B). QFs are a class of facilities, defined by their size, fuel use, efficiency, and ownership, see FERC v. Mississippi, 456 U.S. 742, 750 & n. 11, 102 S.Ct. 2126, 2132 & n. 11, 72 L.Ed.2d 532 (1982), entitled to special treatment under federal and state laws regulating power producers. See 16 U.S.C. § 824a–3(e)(1); 18 C.F.R. § 292.602(c)(1). The Federal Energy Regulatory Commission (FERC) promulgates regulations affecting QFs. State utility regulatory commissions such as PUC implement FERC's regulations on the purchases and sales of power between utilities and QFs.

In passing the legislation authorizing special rules for QFs, the Public Utility Regulatory Policies Act of 1978 (PURPA), Congress viewed QFs as desirable alternatives to traditional electric utility generating facilities. See FERC, 456 U.S. at 750, 102 S.Ct. at 2132.

---

1. Throughout this opinion, we use the term "plaintiffs" to include the plaintiffs-intervenors, Energy Tactics, Inc. and American Hydro, Inc.–Peterborough, as well as the original plaintiffs: Bristol Energy Corp.; Bio–Energy Corp.; Bridgewater Power Co., L.P.; Hemphill Power and Light Co.; Pinetree Power, Inc.; Pinetree Power–Tamworth, Inc.; Timco, Inc.; and Whitefield Power and Light Company. The complaints of these parties are identical in all relevant respects.

At that time, Congress perceived two impediments to QF development: [1] the reluctance of public utilities to sell power to and buy power from QFs; and [2] the financial burdens imposed on QFs by state and federal laws designed to regulate utilities providing electricity to the public. *See id.* at 750–51, 102 S.Ct. at 2132–34. To overcome the first impediment, Congress mandated that FERC promulgate regulations, for states to implement, governing transactions between utilities and QFs, including a requirement that utilities purchase electricity from QFs at a rate up to the utility's avoided cost (*i.e.*, the utility's cost if it generated the power itself, or purchased it from another source). *See* 16 U.S.C. § 824a–3(b), –3(d).

To solve the second problem, Congress eased the financial burdens on QFs by authorizing FERC to exempt QFs from certain federal laws, and from state laws or regulations "respecting the rates, or respecting the financial or organizational regulation, of electric utilities," if necessary to encourage QFs. *Id.* § 824a–3(e). FERC's exemptions for QFs are codified at 18 C.F.R. §§ 292.601 and .602. Plaintiffs allege that PUC's business and financial disclosure order violates the regulation exempting QFs from state regulation of the finances and organization of electric utilities. *See id.* § 292.602(c)(1)(ii) (hereinafter "QF exemption").

On April 16, 1993, PUC commenced proceedings to perform a study of wholesale power supplies required by the Energy Policy Act of 1992, 16 U.S.C. § 2621(d)(10).[2] In connection with its study, PUC sent detailed data requests to eighty QFs in New Hampshire, including plaintiffs, seeking detailed disclosures of financial and proprietary information.[3]

On June 14, 1993, plaintiffs filed an action in the United States District Court for the District of New Hampshire, alleging that they were exempt from PUC's inquiries, pursuant to FERC's QF exemption. They sought a declaratory judgment and an injunction to prevent PUC from enforcing its disclosure orders. PUC countered that, because the QF exemption does not apply to PUC's data requests, the complaint failed to state a claim upon which relief could be granted.[4]

On July 20, 1993, the district court dismissed plaintiffs' action *sua sponte*, stating that it lacked subject matter jurisdiction. In denying plaintiffs' motion for reconsideration, the district court ruled:

> Assuming arguendo that this court could exercise jurisdiction over plaintiffs' purported preemption claim at this stage in the process, there remain at least two problems with plaintiffs' argument. First, defendant's data requests were issued pursuant to federal law; i.e., the Energy Policy Act of 1992. Therefore, [FERC's regulation exempting QFs from state regulation] is inapposite. . . .

*Bristol Energy Corp. v. New Hampshire Pub. Utils. Comm'n,* 827 F.Supp. 81, 83 (D.N.H.1993). Plaintiffs appealed. By order of this court dated August 30, 1993, we di-

---

**2.** Congress passed the Energy Policy Act in part to foster greater competition in the wholesale power production market. *See generally* H.R.Rep. No. 474(I), 102d Cong., 2d Sess. 138–40 (1992), *reprinted in* 1992 U.S.C.C.A.N. 1953, 1961–63.

**3.** Plaintiffs characterize these requests as inquiries into:
> [1] each facility's business form and ownership;
> [2] plaintiff's financing agreements, including the identity of the lender, and the amount of the loan, its rate of interest, any required operating reserve, and the priority of creditors;
> [3] plaintiff's retired debt;
> [4] allocations of income, gains, losses, distributions, credit, and cash, from the closing of any construction loans through the present;

> [5] the form of sales of power, monthly volume of electricity generated, and the identity of their customers; and
> [6] each facility's fuel use, including heat rate, price paid for fuel, projected fuel use through the year 2000, method of fuel transportation, fuel storage capacity, and fuel use risk management strategies.

PUC's data requests also seek copies of plaintiffs' fuel supply contracts and a year-by-year spreadsheet analysis of financial operations from the commencement of operation through the year 2010. *Joint Br. for Appellants and Intervenors–Appellants* at 4–5.

**4.** PUC did not file a motion to dismiss under Fed.R.Civ.P. 12(b)(6), but alleged as a defense in its answer that plaintiffs failed to state a cognizable claim.

rected the parties to address the merits, as well as the jurisdictional issue.

## II.

### Discussion

#### A. Jurisdiction

■ The district court ruled that 16 U.S.C. § 2633 stripped it of jurisdiction. That statute provides, in pertinent part: "Notwithstanding any other provision of law, no court of the United States shall have jurisdiction over any action arising under [16 U.S.C. §§ 2611–2634]...." The authority PUC cited for issuing its data requests is 16 U.S.C. § 2621(d)(10). Thus, we would lack jurisdiction if this case were, in fact, an "action arising under" section 2621(d)(10).

According to plaintiffs, the district court looked at the wrong "action" in deciding the jurisdictional issue. Although PUC sent out data requests pursuant to section 2621(d)(10), plaintiffs argue that this case does not "aris[e] under" that section. Rather, plaintiffs argue that their cause of action implicates principles of preemption, relating to the QF exemption and the Supremacy Clause. Plaintiffs maintain that this preemption claim triggers federal question jurisdiction. We agree.

"It is well established that to invoke federal question jurisdiction, a federal issue must appear on the face of a well pleaded complaint." *Cable Television Ass'n v. Finneran*, 954 F.2d 91, 94 (2d Cir.1992); *see also Colonial Penn Group v. Colonial Deposit Co.*, 834 F.2d 229, 233 (1st Cir.1987). Here, plaintiffs allege that FERC's QF exemption under PURPA preempts PUC's authority under state law to order QFs to disclose business and financial information. Plaintiffs seek an injunction, as well as a declaratory judgment, to prevent the enforcement of PUC's data requests. This case is thus aligned with *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), in which the Supreme Court noted:

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal

rights. See *Ex parte Young*, 209 U.S. 123, 160–62 [28 S.Ct. 441, 454–55, 52 L.Ed. 714] (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. at 2899 n. 14; *see also Playboy Enters. v. Public Serv. Comm'n*, 906 F.2d 25, 31 (1st Cir.), *cert. denied*, 498 U.S. 959, 111 S.Ct. 388, 112 L.Ed.2d 399 (1990).

We have considered—and we reject—PUC's argument that 16 U.S.C. § 824a–3(g) divests federal courts of jurisdiction. Section 824a–3(g) places limits on federal jurisdiction in proceedings involving rules implementing 16 U.S.C. §§ 824a–3(a) and –3(f), rules not at issue in this case.[5] *See id.* § 824a–3(g). The record in this case confirms what PUC's counsel conceded at oral argument: PUC's data requests were issued pursuant to both state law and 16 U.S.C. § 2621(d)(10), not under the rules cited in section 824a–3(g). We conclude that federal question jurisdiction exists in this case, as in *Shaw*, because plaintiffs allege a preemption claim and seek to enjoin state officials from interfering with a federal right, *i.e.*, the QF exemption.

#### B. Merits

Plaintiffs have alleged that they are entitled to declaratory and injunctive relief because PUC's action is preempted by federal law. The federal law that allegedly preempts PUC's inquiries is the QF exemption. That regulation provides in pertinent part: "Any qualifying facility shall be exempted ... from State law or regulation respecting ... [t]he financial and organizational regulation of electric utilities." 18 C.F.R. § 292.602(c)(1)(ii). We consider, *seriatim*, two issues: [1] whether PUC's one-time inquiry of QFs to gather information for a study mandated by 16 U.S.C. § 2621(d)(10) constitutes state "regulation respecting ...

---

5. Section 824a–3(a) and –3(f) rules concern, *inter alia*, the purchases and sales of power between electric utilities and QFs. *See* 16 U.S.C. §§ 824a–3(a), –3(f).

[t]he financial and organizational regulation of electric utilities"; and [2] whether Congress intended state agencies such as PUC to request information from QFs to complete the study mandated by 16 U.S.C. § 2621(d)(10).

### 1. *Are QFs Exempt from PUC's Inquiries?*

■ FERC, as an amicus in this case, argues that the QF exemption does not preempt PUC's inquiries because PUC is seeking information on a one-time basis, to complete a federally mandated study of wholesale power supplies. *See* section 712 of the Energy Policy Act of 1992, 16 U.S.C. § 2621(d)(10). According to FERC, such a limited collection of information for a federally mandated study does not contravene the letter or the spirit of the QF exemption from state "regulation respecting ... the financ[es] and organization[ ]" of QFs. We agree.

FERC promulgated the QF exemption pursuant to Congress's mandate that QFs be exempted from state regulations on the rates, finances, and organization of electric utilities, if FERC found such an exemption necessary to encourage QF power production. *See* 16 U.S.C. § 824a–3(e)(1). FERC takes the position that its exemption allows QFs to avoid "utility-type" regulation, 45 Fed.Reg. 12,214, 12,232 (Feb. 25, 1980) (preamble to final rule), including state control of electricity rates and the finances, capitalization, and organization of electric utilities.

PUC's inquiries are not preempted by FERC's QF exemption. We do not dispute that PUC is seeking financial and organizational information from plaintiffs. And we can visualize circumstances in which a state agency's standing order requiring periodic disclosures of financial records might be part-and-parcel of the control over electric utilities from which QFs are exempt. *See*

*generally* 18 C.F.R. § 292.601(c) (exempting QFs from, *inter alia,* 16 U.S.C. § 825(b) (authorizing FERC to have access "at all times" to accounts, records, and memoranda of public utilities)); 44 Fed.Reg. 38,863, 38,-865 (July 3, 1979) (FERC Staff Paper) (noting that FERC could exempt QFs from "requirements for filing voluminous reports concerning operating, cost and revenue data").

But PUC did not assert such plenary authority over QFs when it issued the document requests. In fact, PUC cited only its authority under state law and the necessity of completing the evaluation mandated by section 712 of the Energy Policy Act, 16 U.S.C. § 2621(d)(10). The record suggests that PUC's inquiries seek information related to the factors enumerated in 16 U.S.C. § 2621(d)(10)—assuming QFs are proper sources of such information. Because PUC is gathering data on a one-time basis to perform the study mandated by the Energy Policy Act, 16 U.S.C. § 2621(d)(10), the QF exemption is not a sound foundation for a preemption claim. Such an inquiry is not utility-type regulation. Nor does the record suggest that the information will be used for utility-type regulation.

### 2. *Did Congress Intend QFs To Be Included in the Study?*

■ Plaintiffs argue that Congress did not intend QFs to be included in the Energy Policy Act study. The Energy Policy Act requires that certain state agencies perform "a general evaluation" of four factors relating to wholesale power supplies: [1] the impact of long-term wholesale power purchases on a utility's cost of capital and retail rates; [2] the effect of the debt-laden capital structure of "exempt wholesale generators" on utilities and on reliability; [3] the propriety of advance approval for long-term wholesale power purchase contracts; and [4] the need for assurances of fuel supply adequacy in long-term wholesale power purchase contracts.[6]

6.  Section 2621(d)(10) provides, in pertinent part:
    (A) To the extent that a State regulatory authority requires or allows electric utilities for which it has ratemaking authority to consider the purchase of long-term wholesale power supplies as a means of meeting electric de-
    mand, such authority shall perform a general evaluation of:
    (i) the potential for increases or decreases in the costs of capital for such utilities, and any resulting increases or decreases in the retail rates paid by electric consumers, that may

See 16 U.S.C. § 2621(d)(10)(A); *see generally* Jeffrey D. Watkiss & Douglas W. Smith, *The Energy Policy Act of 1992—A Watershed for Competition in the Wholesale Power Market,* 10 Yale J. on Reg. 447, 475 & n. 130 (1993). PUC is included in the class of state agencies required to perform this study; that is, those requiring or allowing utilities to purchase long-term wholesale power supplies. *See* 16 U.S.C. § 2621(d)(10)(A). The statute provides that states must "consider and make a determination concerning whether . . . to implement the[se] standards" by October 24, 1993. *Id.* § 2621(d)(10)(E).

Plaintiffs maintain that the Energy Policy Act study concerns only a new class of nonutility power producers called "exempt wholesale generators" (EWGs).[7] Plaintiffs also contend that the only power producers intended by Congress to be subject to PUC's inquiries are EWGs, electric utilities, and certain affiliates of EWGs.

The central issue is whether Congress intended state agencies to make inquiries of QFs to complete their evaluation of wholesale power supplies. Considering first the language of the statute to be construed, *see American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), we note that Congress mandated that agencies, including PUC, perform "a general evaluation" of the enumerated factors respecting wholesale power supplies. Although the statute makes no mention of QFs, the use of the term "general evaluation" suggests that the scope of the study is intended to be broad. Only the second factor—the impact of debt-laden EWG capital structures on utilities and on reliability—explicitly refers to

EWGs; the remaining three factors refer to "long-term wholesale power purchases." It is undisputed that plaintiffs supply power at wholesale to electric utilities in New Hampshire under long-term contracts, and that QFs entering the market in the future could enter into long-term contracts with utilities in the state. The language and structure of the statute indicate that Congress intended QFs to be a source of information.

Common sense reinforces this conclusion. Congress clearly intended the "general evaluation" of wholesale power supply issues to be meaningful and comprehensive, especially because the Energy Policy Act is designed to increase competition in the wholesale power production market. *See generally* H.R.Rep. No. 474(I), *supra,* at 138–40, *reprinted in* 1992 U.S.C.C.A.N. at 1961–63; Watkiss & Smith, *supra,* at 449. Nurtured by FERC's regulations and by PURPA since 1978, QFs have become an important source of power for utilities to purchase at wholesale. For example, there were at least eighty QFs operating in New Hampshire in the spring of 1993. EWGs, in contrast to QFs, are a new category of wholesale power producer, created by the Energy Policy Act of 1992. A company can become an EWG only by filing an application with FERC. *See* 15 U.S.C. § 79z–5a(a)(1). Accordingly, there were no EWGs in existence when Congress enacted the provision requiring states to study wholesale power supply issues. We are led inexorably to the conclusion that Congress intended state agencies to gather data from QFs, because they are significant existing sources of wholesale power, in order to assess the

---

result from purchases of long-term wholesale power supplies in lieu of the construction of new generation facilities by such utilities;

(ii) whether the use by exempt wholesale generators . . . of capital structures which employ proportionally greater amounts of debt than the capital structures of such utilities threatens reliability or provides an unfair advantage for exempt wholesale generators over such utilities;

(iii) whether to implement procedures for the advance approval or disapproval of the purchase of a particular long-term wholesale power supply; and

(iv) whether to require as a condition for the approval of the purchase of power that there

be reasonable assurances of fuel supply adequacy.

16 U.S.C. § 2621(d)(10). A state agency need not perform the evaluation or implement any procedures suggested by it, if such action would be inconsistent with state law or inappropriate under PURPA. *See* 16 U.S.C. § 2621(a), (c)(1); *FERC,* 456 U.S. at 764–70, 102 S.Ct. at 2140–43. PUC has decided that it is required to perform the study.

7. EWGs are so called because they are entitled to exemptions from certain federal utility regulations, including ownership and capitalization restrictions under the Public Utility Holding Company Act and the Federal Power Act. *See generally* Watkiss & Smith, *supra,* at 465 n. 74, 467.

present power situation and to predict the impact of new entrants into the wholesale power market.

At oral argument, counsel for plaintiffs stated that state agencies could acquire information regarding QFs from third-party sources. This point does not affect our determination that Congress intended states to make inquiries of QFs, so that the general evaluation of long-term wholesale power purchases would be meaningful. No source of information on QFs would be as authoritative as the QFs themselves. If Congress intended information regarding QFs to be part of the Energy Policy Act "general evaluation," presumably Congress intended that QFs would be the source of this information.

Plaintiffs' next argument is that section 714 of the Energy Policy Act, 16 U.S.C. § 824(g)(1), manifests Congress's intent that states cannot subject QFs to business and financial inquiries. Section 714 provides, "[u]pon written order of a State commission, a State commission may examine the books, accounts, memoranda, contracts, and records of" electric utilities, EWGs, and affiliates of EWGs. 16 U.S.C. § 824(g)(1). Because Congress enacted both section 714 and the provision mandating the study of wholesale power supplies under the Energy Policy Act, plaintiffs argue that section 714 limits the scope of the "general evaluation" required by 16 U.S.C. § 2621(d)(10) to electric utilities, EWGs, and their affiliates.

Plaintiffs' argument elevates a rule of statutory construction—that two provisions of the same legislation must be read together—above a full and sensible reading of the statutes at issue. Section 714 specifically provides: "Nothing in this section shall—(A) preempt applicable State law concerning the provision of records and other information; or (B) in any way limit rights to obtain records and other information under Federal law, contracts, or otherwise." 16 U.S.C. § 824(g)(4). That provision negates plaintiffs' attempt to use the facilities enumerated in section 714 as an exclusive list of power producers susceptible to state data requests pursuant to section 2621(d)(10).

Furthermore, there is an obvious reason why Congress would have omitted QFs from section 714, while still intending that QFs respond to inquiries pursuant to section 2621(d)(10): section 714 is an unrestricted grant of authority. The statute provides that a state agency may examine the records of electric utilities, EWGs, and affiliates of EWGs, "if such examination is required for the effective discharge" of the agency's "responsibilities affecting the provision of electric service." 16 U.S.C. § 824(g)(1). The statute does not mention section 2621(d)(10), let alone limit the exercise of this document inspection authority to gathering information for an evaluation of long-term wholesale power supply purchases. If QFs were among the power producers listed in section 714, a court could infer Congress's intent to repeal partially FERC's QF exemptions, so that QFs would be proper subjects of any information requests by state agencies. *See Natural Resources Defense Council v. Environmental Protection Agency,* 824 F.2d 1258, 1278 (1st Cir.1987) (more recent, more specific enactments prevail over prior, more generalized law); 1A Norman J. Singer, *Sutherland on Stats.* § 23.14, at 372 (5th ed. 1993). Excluding QFs from section 714 preserves the general QF exemption from state laws and regulations respecting the finances and organization of electric utilities.

■ Finally, plaintiffs argue that allowing PUC to make inquiries into the finances and organization of QFs is tantamount to finding an implied repeal of the QF exemption. Our holding does not cut that broadly. We hold that PUC may make inquiries of QFs on a one-time basis because it is acting to complete a study mandated by federal law. Such regulatory action is not a state "law or regulation respecting ... [t]he financial and organizational regulation of electric utilities," 18 C.F.R. § 292.602(c)(1)(ii). Our decision does not alter the QF exemption.

In light of the foregoing, we reject plaintiffs' preemption claim. Even accepting all plaintiffs' factual allegations as true, we find no basis on which plaintiffs may proceed. This case is thus properly dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a cognizable claim.

478

We recognize that the district court did not rely on this ground for dismissing this case. We note, however, that PUC affirmatively pleaded that the complaint failed to state a claim. Moreover, the district court stated that even if it had subject matter jurisdiction, there would still be "problems with plaintiffs' argument," *Bristol Energy*, 827 F.Supp. at 83, and we ordered the parties to address the merits on appeal. Even assuming the district court did not deem that reason dispositive, we may affirm the court's ruling on any theory supported by the record. *See Willhauck v. Halpin*, 953 F.2d 689, 704 (1st Cir.1991). We do so here.[8]

We conclude in this case that plaintiffs' allegations provide a basis for federal question jurisdiction, but we find that their preemption claim lacks merit. The district court's dismissal of this case is therefore

*Affirmed.*

---

**8.** We also note that an appellate court may dismiss a claim *sua sponte* on Rule 12(b)(6) grounds when, taking a plaintiff's factual allegations as true, there is a dispositive issue of law. *See*

*Gregory v. United States/United States Bankruptcy Court*, 942 F.2d 1498, 1500 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992).