**KENTUCKY WEST VIRGINIA GAS COMPANY, et al., Plaintiffs,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, et al., Defendants.**

**Civ. A. No. 85–1514.**

United States District Court,
M.D. Pennsylvania.

Nov. 6, 1985.

Thomas & Thomas, Harrisburg, Pa., William A. Mogel, Ross, Marsh & Foster, Washington, D.C., for plaintiffs.

Eric N. Wise, Arlington, Va., for American Gas Assoc.

Joanne Leveque, Washington, D.C., for F.E.R.C.

Charles Hoffman, Chief Counsel, Pa. PUC, Harrisburg, Pa., Alphonso Arnold, Jr., Harrisburg, Pa., for Pennsylvania Public Utility Com'n.

Michael Finio, Eugene Waye, Harrisburg, Pa., for Atty. General (Intervener).

Philip McClelland, Harrisburg, Pa., for Consumer Advocate (Intervener).

## MEMORANDUM

CALDWELL, District Judge.

I. *Introduction.*

Plaintiffs, Kentucky West Virginia Gas Company (Kentucky West) and Equitable Resources, Inc. (Equitable), have filed a complaint for preliminary and permanent injunction and a declaratory judgment against defendants, the Pennsylvania Public Utility Commission (PUC) and its individual members, Linda C. Taliaferro, Frank Fischl and Bill Shane. The Federal Energy Regulatory Commission (FERC) has also been named as a defendant. Plaintiffs claim that a PUC order directed at Equitable, dated August 29, 1985, and certain sections of Pennsylvania Act No. 1984–74, pursuant to which the order was issued, violate the commerce clause,[1] the supremacy clause,[2] and the first, fifth and fourteenth amendments.[3] Plaintiffs also claim that the Act No. 1984–74 and the agency order violate certain sections of the Natural Gas Act (NGA), 15 U.S.C. § 717 *et seq.* and the Natural Gas Policy Act (NGPA), 15 U.S.C. § 3301 *et seq.*

Motions to intervene were filed by David M. Barasch, Consumer Advocate for the Commonwealth of Pennsylvania, the Office of the Attorney General of Pennsylvania

and the American Gas Association (AGA), a national trade association representing the interests of gas companies which distribute and transport natural gas. Barasch and the Attorney General were permitted to intervene as defendants. The AGA was allowed into the suit as an amicus curiae.

On October 30, 1985, a hearing on the requested injunctive and declaratory relief was held and the parties have briefed and argued their positions. Plaintiffs' request is therefore ripe for disposition.

II. *Background.*

Plaintiff, Equitable, produces, purchases, transports, stores, distributes and sells natural gas in both interstate and intrastate commerce. Subject to the authority of the PUC it retails gas to approximately 240,000 customers in southwestern Pennsylvania. Equitable purchases approximately 80% of its gas from three interstate suppliers. One of these is plaintiff, Kentucky West, with which Equitable has a long term contract for purchasing gas. Kentucky West is a wholly owned subsidiary of Equitable Resources, Inc. and Equitable is a division of that company. Kentucky West's wholesale rates for natural gas are regulated by FERC which approved the rates charged to Equitable.

On March 1, 1985, Equitable sought approval of new rates for its retail customers by filing a computation of Annual Purchased Gas Adjustment pursuant to 66 Pa. C.S. § 1307(f). The PUC investigated the justness and reasonableness of the proposed rates under authority conferred upon it by Act No. 1984–74. See 66 Pa.C.S. § 1307(f)(2). Fourteen days of hearings were held. The PUC Order of August 29, 1985 followed in which the agency disallowed the requested rates because it found that Equitable had not pursued a least cost fuel procurement policy, consistent with its

---

**1.** The commerce clause authorizes Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl.3.

**2.** The supremacy clause provides, in relevant part, as follows: "This Constitution, and the

Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land, ...." U.S. Const. art. VI, cl. 2.

**3.** U.S. Const. amend. I, V, and XIV, § 1.

obligation to provide safe, adequate and reliable service.[4] Specifically, the PUC found that Equitable had failed to use its own production and that of other suppliers to keep costs down. Rather, it had purchased higher priced gas from Kentucky West. Equitable filed a Petition for Review of the order in the Pennsylvania Commonwealth Court on September 27, 1985. This lawsuit was filed on October 11, 1985.

## III. *Discussion.*

Briefly, plaintiffs mainly argue on the merits that Pennsylvania's attempt to require Equitable to follow a least cost procurement policy intrudes upon the FERC's authority to set Kentucky West's interstate rate for gas. In their view, Pennsylvania must accept the FERC approved rate in considering Equitable's intrastate rate. To do otherwise violates the commerce and supremacy clauses.

Initially, however, we will consider two defense arguments which would, if successful, require us to dismiss this action without reaching the merits. The PUC contends that, pursuant to the Johnson Act, 28 U.S.C. § 1342, we do not have jurisdiction over this case. The agency and defendant Barasch, further contend that, in any event, we should exercise our discretion and abstain from adjudicating plaintiffs' claims. Both defendants rely upon *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) to support the latter argument and the PUC further argues that abstention under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) is appropriate. Since the Johnson Act may, as the PUC contends, preclude jurisdiction over this action, we turn to that issue first.

The Johnson Act provides as follows:

The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting

4. 66 Pa.C.S. § 1318, a part of No. 1984–74, provides, in pertinent part, as follows:

(a) General rule.—In establishing just and reasonable rates for those natural gas distribution utilities with gross intrastate operating revenues in excess of $40,000,000 under section 1307(f) (relating to sliding scale of rates; adjustments) or 1308(d) (relating to voluntary changes in rates) or any other rate proceeding, the commission shall consider the materials provided by the utilities pursuant to section 1317 (relating to regulation of natural gas costs). No rates for a natural gas distribution utility shall be deemed just and reasonable unless the commission finds that the utility is pursuing a least cost fuel procurement policy, consistent with the utility's obligation to provide safe, adequate and reliable service to its customers. In making such a determination, the commission shall be required to make specific findings which shall include, but need not be limited to, findings that:

(1) The utility has fully and vigorously represented the interests of its ratepayers in proceedings before the Federal Energy Regulatory Commission.

(2) The utility has taken all prudent steps necessary to negotiate favorable gas supply contracts and to relieve the utility from terms in existing contracts with its gas suppliers which are or may be adverse to the interests of the utility's ratepayers.

(3) The utility has taken all prudent steps necessary to obtain lower cost gas supplies on both short-term and long-term bases both

within and outside the Commonwealth, including the use of gas transportation arrangements with pipelines and other distribution companies.

(4) The utility has not withheld from the market or caused to be withheld from the market any gas supplies which should have been utilized as part of a least cost fuel procurement policy.

(b) Limitation on gas purchased from affiliates.—In any instance in which a gas distribution utility purchases all or part of its gas supplies from an affiliated interest, as that term is defined in section 2101 (relating to definition of affiliated interest), the commission, in addition to the determinations and findings set forth in subsection (a), shall be required to make specific findings with regard to the justness and reasonableness of all such purchases. Such findings shall include, but not be limited to findings:

(1) That the utility has fully and vigorously attempted to obtain less costly gas supplies on both short-term and long-term bases from nonaffiliated interests.

(2) That each contract for the purchase of gas from its affiliated interest is consistent with a least cost fuel procurement policy.

(3) That neither the utility nor its affiliated interest has withheld from the market any gas supplies which should have been utilized as part of a least cost fuel procurement policy.

rates chargeable by a public utility and made by a State administrative agency or a ratemaking body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

All of the conditions of the Act must be satisfied to support a finding of no jurisdiction. *Zucker v. Bell Telephone Company,* 373 F.Supp. 748 (E.D.Pa.1974), *aff'd mem.* 510 F.2d 971 (3d Cir.1975), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975). In the instant case, the first condition has not been met because jurisdiction is not based solely upon repugnance of the order to the federal constitution. Plaintiffs also claim that Act No. 1984–74 violates the commerce and supremacy clauses. *See International Brotherhood of Electrical Workers, Local Union No. 1245 v. Public Service Commission,* 614 F.2d 206 (9th Cir.1980). We also cannot conclude that the order does not interfere with interstate commerce. Although defendants argue that only intrastate commerce is involved, for the purposes of the motions to dismiss, we believe that we must accept plaintiffs' contention concerning the affect upon interstate commerce. *See Aluminum Company of America v. Utilities Commission,* 713 F.2d 1024 (4th Cir.1983), *cert. denied,* 465 U.S. 1052, 104 S.Ct. 1326, 79 L.Ed.2d 722 (1984). Accordingly, the Johnson Act does not bar jurisdiction over this case.

■ Turning to the abstention issue, we agree with the PUC and Barasch that, although we have jurisdiction over this case, we should abstain from adjudicating it. We believe that, as urged by the defendants, *Burford* abstention applies here, and also an abstention doctrine not raised by them, *Younger* abstention under *Younger*

*v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In *Pike County Light and Power Co. v. Pennsylvania Public Utility Commission,* No. 82–1608 (M.D.Pa. Jan. 13, 1983), we applied *Burford* to a factual situation analogous to the case at bar. In *Pike County,* plaintiff, an electrical power utility, contested a PUC order disallowing a portion of its rate request. The disallowance was based, in part, on the PUC's determination that the utility's purchased power expenses, already FERC approved, were unreasonable. Plaintiff had appealed the order in the state courts.

We abstained based upon the concern of the Court in *Burford* for respecting the rightful independence of state governments and to further the harmonious relationship between state and federal authority. We also quoted from the court's discussion of *Burford* in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976) (emphasis in *Pike County* ):

Abstention is ∴.. appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar. ... In some cases, however, the state question itself need not be determinative of state policy. *It is enough that exercise. of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.*

These considerations are equally compelling in the case at bar. The courts, while recognizing the federal prerogative to regulate the interstate aspects of utilities' sales have also respected the great interest the states have in regulating retail utility rates within their boundaries. *See Arkansas Electric Cooperative Corp. v. Arkansas Public Service Comm'n,* 461 U.S. 375, 103 S.Ct. 1905, 76 L.Ed.2d 1 (1983). We conclude that abstention under *Burford* is

**1462**

appropriate here. *See also Aluminum Company of America v. Utilities Commission, supra; Aims Enterprises, Inc. v. Muir,* 609 F.Supp. 257 (M.D.Pa.1985).

*Younger v. Harris, supra,* also indicates that we should abstain. *Younger* dealt with the propriety of a district court's interference with a state criminal proceeding but it has been applied to noncriminal state proceedings. As stated by the court in *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116, 124 (brackets added):

> The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved. [citations omitted]. The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature.... Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. [citations omitted]. Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore [v. Sims,* 442 U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994, 1005 (1979)]. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Id.,* at 430, 99 S.Ct. at 2371, 60 L.Ed.2d 994.

The PUC investigation here did not implicate the state judicial system but Equitable has now involved the state judiciary by filing its petition for review in the Commonwealth Court. We believe therefore that the threefold question which arose in *Middlesex* may be asked here as well.[5] It may be paraphrased as follows: first, do the proceedings in the Commonwealth Court constitute an ongoing state judicial proceeding; second, do the proceedings im-

plicate an important state interest; third, is there an adequate opportunity in the state proceedings to raise constitutional challenges. *See Aims Enterprises, Inc., supra.*

Obviously, the first part of the question may be answered affirmatively. Also, we have already concluded that Pennsylvania has an important state interest in regulating retail gas prices. Finally, plaintiff Equitable has an adequate opportunity to raise federal constitutional challenges in the state proceedings. See Pa.R.App.P. 1501 *et seq.* In fact, it has already done so in its petition for review in the Commonwealth Court. Therefore, *Younger* indicates we should abstain.

We will issue an appropriate order.

---

---

5. In any event, as noted previously, important state policies dealing with the setting of retail

natural gas rates are implicated here.