

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-9-1995

# Freehold v Bd Regulatory Comm

Precedential or Non-Precedential:

Docket 94-5168

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Freehold v Bd Regulatory Comm" (1995). *1995 Decisions.* Paper 7.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/7

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO.  94-5168

_____

FREEHOLD COGENERATION ASSOCIATES, L.P.,

Appellant

v.

BOARD OF REGULATORY COMMISSIONERS OF THE STATE OF NEW JERSEY;
JERSEY CENTRAL POWER AND LIGHT COMPANY

_____

Appeal from the United States District Court
for the District of New Jersey
D.C. No. 94-cv-00375

_____

Argued October 28, 1994
Before:  STAPLETON, HUTCHINSON, and ROSENN, <u>Circuit Judges</u>

Opinion Filed January 9, 1995

_____

ROBERT F. SHAPIRO, ESQ. (Argued)
LYNN N. HARGIS, ESQ.
DAVID C. DICKEY, ESQ.
Chadbourne & Parke
1101 Vermont Avenue, N.W.
Washington, D.C.  20005

CHARLES J. WALSH, ESQ.
Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A.
One Riverfront Plaza
Newark, NJ  07102-5400
  Attorneys for Appellant

STEVEN E. GREENBAUM, ESQ. (Argued)
JOHN P. BIEDERMANN, ESQ.
Berlack, Israels & Liberman
120 West 45th Street
New York, New York  10036
  Attorneys for Jersey Central Power & Light Co.

THEODORE C. GRANGER, PUBLIC ADVOCATE (Argued)
Department of the Public Advocate of New Jersey

31 Clinton Street
Newark, NJ  07109

DEBORAH T. PORITZ, ATTORNEY GENERAL
ANDREA M. SILKOWITZ, ASSISTANT ATTORNEY GENERAL
HELENE S. WALLENSTEIN, DEPUTY ATTORNEY GENERAL (Argued)
R.J. Hughes Justice Complex
Trenton, NJ  08625
  Attorneys for Board of Regulatory Commissioners


SAMUEL SOOPER, ESQ.
Federal Energy Regulatory Commission
Room 3000
825 North Capitol Street, N.E.
Washington, DC 20426
  Attorney for Federal Energy Regulatory Commission

_____

OPINION OF THE COURT

ROSENN, Circuit Judge.


        This case has its genesis in Congress' creative effort
to promote the use of alternative energy sources by state and
federal utility authorities.  To make the nation more energy
independent, Congress sought to encourage small power production
facilities that use renewable fuels, such as solar, wind, biomass
and water, and cogeneration facilities that use traditional fuels
more efficiently by sequentially producing both electricity and
steam or other useful thermal energy.  Freehold Cogeneration
Associates, L.P. ("Freehold") is the type of facility that
Congress wished to promote.

        On January 19, 1994, Freehold sought a declaratory
judgment in the United States District Court for the District of
New Jersey that the Board of Regulatory Commissioners of the
State of New Jersey (the "BRC") was preempted by the Federal
Public Utilities Regulatory Policies Act ("PURPA") from modifying

the terms of a previously approved power purchase agreement ("PPA") between Freehold and Jersey Central Power and Light Company ("JCP&L"), a New Jersey public utility. Freehold also sought an order enjoining the ongoing BRC proceedings. Freehold moved for summary judgment, and the BRC and JCP&L moved to dismiss on various grounds. The district court denied Freehold's motion for summary judgment and granted the defendants' motion to dismiss, holding that it lacked subject matter jurisdiction to hear the matter. Freehold filed a timely appeal to this court.[1]

We reverse.

### I.

Under the Federal Power Act, 16 U.S.C. § 791a et seq., the Federal Energy Regulatory Commission (the "FERC") had the exclusive authority to regulate "public utilities" that sell electric power at wholesale in interstate commerce. Id. at § 824(e). In 1978, Congress modified the Federal Power Act with the enactment of the Public Utility Regulatory Policies Act, 16 U.S.C. § 823a et seq., as part of a comprehensive legislative effort to combat a nationwide energy crisis. PURPA is intended to control power generation costs and ensure long-term economic growth by reducing the nation's reliance on oil and gas and increasing the use of more abundant domestically produced fuels. In enacting PURPA, Congress directed the FERC to promulgate rules

---

[1]. This court has jurisdiction pursuant to 28 U.S.C. § 1291 over this appeal from the district court's final judgment. The jurisdiction of the district court is discussed in section II, infra.

and regulations requiring public utilities to buy electric energy from, and to sell electric energy to, qualifying cogeneration facilities ("QFs"). 16 U.S.C. § 824a-3.[2] Congress directed state regulatory authorities, such as the BRC, to implement the rules and regulations promulgated by the FERC. Id.

In early 1988, pursuant to the then-effective cogeneration policies and procedures of the New Jersey Board of Public Utilities (the "BPU"), the predecessor agency to the BRC, Freehold commenced negotiations with JCP&L concerning a potential power purchase agreement. During the pendency of these negotiations, the BPU adopted certain competitive bidding guidelines which replaced negotiation as the method by which utilities were to procure long-term power purchase agreements with cogeneration facilities such as Freehold.

After these competitive bidding guidelines took effect, Freehold petitioned the BPU to "grandfather" or exempt it from the newly adopted guidelines. JCP&L opposed the petition. By Order dated July 31, 1989, the BPU agreed to grandfather Freehold. Freehold's negotiations with JCP&L were thereby governed by the pre-existing policies and procedures, which allowed Freehold and JCP&L to negotiate the terms of a power

---

[2]. A cogeneration facility is one which produces electrical energy, and steam or forms of useful energy which are used for industrial commercial, heating, or cooling purposes. 16 U.S.C. § 796(18)(A). In order to qualify as a QF, a facility must meet the requirements set forth by the FERC, 18 C.F.R. § 292.101, et seq., and the facility must be owned by an entity not primarily engaged in the generation or sale of electrical power, 16 U.S.C. § 796(18)(B). Freehold is a QF.

purchase agreement. On March 26, 1992, after three years of extensive negotiations, Freehold and JCP&L entered into a power purchase agreement (the "PPA"), to commence on the date of BRC approval and to continue thereafter for a period of twenty years. The BRC approved the PPA by order dated July 8, 1992.[3]

Under the terms of the PPA, JCP&L is to pay Freehold 100% of JCP&L's 1989 avoided cost for the purchase of electrical power. Avoided cost is the cost which JCP&L avoids by purchasing energy from Freehold rather than generating the energy itself or purchasing it from some other source. 16 U.S.C. § 824a-3(d).

On April 12, 1993, in response to decreases in the cost of obtaining electrical power, the BRC directed public utilities to notify it of any power supply contracts which were no longer economically beneficial. The BRC wished to encourage buy outs and other remedial measures to reduce power costs.

After reviewing its contract with Freehold, JCP&L concluded that the PPA should be modified. On April 16, 1993, JCP&L contacted Freehold and proposed a buy out of the PPA. Freehold rejected the proposal. On May 12, 1993, JCP&L notified the BRC that the PPA was no longer an economically beneficial

---

[3]. JCP&L challenges the BRC's 1988 order grandfathering Freehold from the 1988 rate guidelines, and the 1992 BRC order approving the rates. However, both of these orders are now final and nonappealable.

Additionally, we will not address the Division of the Ratepayer Advocate's ("DRA") argument that the BRC's approval of a 1989 avoided cost in 1992 was ultra vires because the DRA is making this argument for the first time on appeal. See Patterson v. Cuyler, 729 F.2d 925, 929 (3d Cir. 1984).

contract because the contractual avoided cost was significantly higher than the current avoided cost due to the decrease in the cost of obtaining electrical power.  On September 22, 1993, JCP&L again proposed a buy out to Freehold, which Freehold again rejected.  The BRC then unsuccessfully attempted to formulate a joint agreement between the parties modifying the PPA.  By order dated January 5, 1994, the BRC directed the parties to renegotiate the purchase rate term of the PPA or, in the alternative, to negotiate an appropriate buy out of the PPA.  The order further provided that if the parties did not reach an agreement within 30 days of the order, the BRC would commence an evidentiary hearing to consider various courses of action.

Freehold filed this action on January 14, 1994, seeking a judgment declaring that the BRC's order is preempted by PURPA and a court order enjoining the enforcement of that order.  The district court granted the defendants' motion to dismiss, holding that section 210(g) of PURPA, 18 U.S.C. § 824a-3(g), and the Johnson Act, 28 U.S.C. § 1342, divested it of subject matter jurisdiction.  The court further found that the PPA, which refers disputes under the agreement to "the BRC or a court of competent jurisdiction in the State of New Jersey," supported its finding that there was no federal jurisdiction.  The district court did not address the preemption argument in its opinion.

## II.

In enacting PURPA, Congress sought to overcome traditional electric utilities' reluctance to purchase power from nontraditional electric generation facilities and to reduce the

financial burden of state and federal regulation on nontraditional facilities. FERC v. Mississippi, 456 U.S. 742, 750-51 (1982). To overcome the first impediment to developing nontraditional sources of power, section 210(a) of PURPA, 16 U.S.C. § 824a-3, requires the FERC to prescribe "such rules as it determines necessary to encourage cogeneration and small power production," including rules requiring traditional utilities to purchase electricity from QFs. FERC v. Mississippi, 456 U.S. at 751. State regulatory authorities will then implement these rules. 16 U.S.C. § 824a-3(f).

To surmount the second obstacle, section 210(e) of PURPA requires the FERC to implement regulations exempting QFs from federal regulation to which traditional electric utilities are subject, including most provisions of the Federal Power Act and "[s]tate laws and regulations respecting the rates, or respecting the financial or organizational regulation, of electric utilities." 16 U.S.C. § 824a-3(a)(1). In accordance with these provisions of PURPA, the FERC promulgated regulations governing transactions between utilities and QFs, including a specific requirement that a utility must purchase electricity made available by QFs at a rate up to the utility's full avoided cost. 18 C.F.R. §§ 292.303-304 (1993).

Acting pursuant to section 210(e)(1) of PURPA, the FERC also promulgated regulations exempting QFs from various federal and state regulatory requirements. The regulations state in pertinent part:

> (1) Any [QF] shall be exempted . . . from
> State law or regulation respecting:
>
> > (i) The rates of electric
> > utilities; and
>
> > (ii) The financial and
> > organizational regulation of
> > electric utilities.

18 C.F.R. § 292.602(c).

## A.

Freehold asserts that the district court had federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Freehold claimed that the BRC proceeding violated its federally-established PURPA rights.  As support, Freehold relies on Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983), in which the Court stated:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. . . .  A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

Id. at 96 n.14 (citations omitted).  Accord Airco Industrial Gases, Inc. Div. of BOC Group, Inc. v. Teamsters Health & Welfare Pension Fund, 850 F.2d 1028, 1032-34 (3d Cir. 1988) (district court subject matter jurisdiction under section 1331 turns on whether cause of action arises under laws of United States).

The district court did not address section 1331 jurisdiction, but rather read section 210(g) of PURPA as carving

out an exception to federal jurisdiction over all PURPA claims
except those involving judicial review of a final decision by the
FERC.  The district court reasoned that:

> [B]y enacting [section 210(g)], Congress
> specifically provided that judicial review of
> orders by the State regulatory authorities
> was to be made only by the state courts or
> FERC.  The only instance where Congress
> provided for federal court jurisdiction is
> where a party seeks judicial review of a
> decision by FERC.  Here, FERC has made no
> determination which this Court might review,
> nor does Freehold allege this as a basis for
> jurisdiction.  Thus, under PURPA, this Court
> does not have jurisdiction over Freehold's
> challenge to the BRC's order.

Section 210(g)'s language, however, shows that it is
more limited in scope than the district court believed.  Section
210(g) provides:

> (1) Judicial review may be obtained
> respecting any proceeding conducted by a
> State regulatory authority or nonregulated
> electric utility for purposes of implementing
> any requirement of a rule under subsection
> (a) . . . [under the same requirements as
> judicial review may be obtained under 16
> U.S.C. § 2633] (emphasis added).

Thus, section 210(g)(1) applies only to review of proceedings by
state regulators or nonregulated utilities designed to implement
any requirement of rules promulgated by the FERC pursuant to
section 210(a), 16 U.S.C. § 824a-3(a).  Section 210(a) requires
utilities to purchase energy from and sell energy to qualifying
facilities at certain prices.[4]

---

[4].  Section 210(g)(2) is not applicable to this action.  That
section provides:

The parties disagree as to whether Freehold is challenging the BRC's implementation of the FERC's rules under section 210(a) or whether it is challenging the BRC's actions under section 210(e) and supporting regulations.  Freehold argues, and the FERC, as <u>amicus</u>, agrees, that Freehold is not challenging the validity of state action implementing the rules adopted by the FERC pursuant to section 210(a).  Rather, it alleges that the BRC proceeding is inconsistent with and preempted by section 210(e) and the FERC regulations promulgated thereunder, which exempt QFs from state utility regulation.  <u>See</u> 16 U.S.C. § 824a-3(e)(1); 18 C.F.R. § 292.602(c).

The defendants argue that Freehold's complaint was brought under section 210(a) of PURPA because the complaint refers to the FERC's rules implemented under subsection (a).  Before the district court, Freehold clearly relied upon FERC's rules implemented under section 210(a) in arguing that the BRC's actions were preempted.  As noted by Freehold, however, such

(..continued)

> Any person (including the Secretary) may bring an action against any electric utility, qualifying small power producer, or qualifying cogenerator to enforce any requirement established by a State regulatory authority or nonregulated electric utility pursuant to subsection (f).  [Such action shall be brought under the same requirements as judicial review may be obtained under 16 U.S.C. § 2633].

This case does not involve a state regulation promulgated pursuant to section 210(f), which governs the sale and purchase of electricity between utilities and QFs, nor was it brought by a person against a QF to enforce such a regulation.

references were necessary to explain what the FERC's PURPA rules provided in order to establish that the BRC's actions were outside those rules. The pleadings reasonably can be read to assert a claim that the BRC proceeding is inconsistent with and preempted by section 210(e) of PURPA and the FERC regulations promulgated thereunder, which exempt QFs from state utility regulation. See Bristol Energy Corp. v. New Hampshire Pub. Utils. Comm'n, 13 F.3d 471, 474 (1st Cir. 1994) (even though defendant sent out data requests pursuant to a certain statute which precluded federal jurisdiction, the court agreed with plaintiffs that the case did not "arise under" that statute, but rather implicated principles of preemption relating to the QF exemption and the Supremacy Clause, which triggered federal question jurisdiction).

The BRC actually concedes that Freehold's complaint was not brought to obtain review of a Board proceeding to implement the FERC rules as required by the jurisdictional limitation in section 210(g) of PURPA. Relying on Greensboro Lumber Co. v. Georgia Power Co., 643 F. Supp. 1345 (N.D. Ga. 1986), aff'd, 844 F.2d 1538 (11th Cir. 1988), however, the BRC argues that Freehold's complaint contends that the BRC has failed to adhere to its own implementation plan under the FERC regulations by attempting to revoke or modify its prior approval of the PPA. Thus, the BRC submits that "Freehold's complaint [involves] a claim with regard to the Board's Order implementing the FERC rules."

The district court also relied on Greensboro.  In that case, the District Court for the Northern District of Georgia held that section 210(g) divested it of jurisdiction over a QF's claim that a nonregulated utility failed to adhere to its own implementation plan in its dealings with the QF.  Greensboro, 643 F. Supp. at 1374.  The court held that PURPA requires that such an "as applied" claim "must be bought (sic) in state court, which has exclusive jurisdiction 'to enforce any requirement' of a nonregulated utility's implementation plan."  Id. (citing 16 U.S.C. § 824a-3(g)(2)).  Thus, PURPA divested the court of jurisdiction because the case involved a claim arising under section 210(f)(1).

In contrast, this case does not involve a claim arising under section 210(f), see supra note 4, but rather a claim arising under section 210(e).  Freehold does not allege that an unregulated authority has failed to provide service to it in violation of the authority's implementation plan, or otherwise challenge the BRC's implementation of FERC rules "as applied." Rather, Freehold complains that the BRC has interfered with its federally-granted right to be exempt from certain utility-type state regulation.  See Independent Energy Producers Ass'n v. California Pub. Utils. Comm'n, No. C-91-2644 MHP, 1992 WL 533058 (N.D. Cal. June 3, 1992), rev'd on other grounds, 36 F.3d 848 (9th Cir. 1994).

Because Freehold is essentially claiming that the BRC is subjecting it to regulations precluded by section 210(e), the jurisdictional limitations of sections 210(g)(1) regarding state

proceedings implementing any requirement of a rule enacted under subsection (a) are not relevant to the district court's jurisdiction.  Thus, it was error to dismiss Freehold's complaint on the basis of PURPA's jurisdictional limitations.  The district court possessed jurisdiction to hear Freehold's preemption claim pursuant to 28 U.S.C. § 1331.

## B.

The district court also found that it must dismiss Freehold's complaint because the Johnson Act, 28 U.S.C. § 1342, eliminated jurisdiction.  In enacting the Johnson Act, Congress intended to seriously curtail federal jurisdiction over the subject of state utility rates.  See Zucker v. Bell Telephone Co., 373 F. Supp. 748, 750 (E.D.Pa. 1974), aff'd, 510 F.2d 971 (3d Cir.), cert. denied, 422 U.S. 1027 (1975).  The Johnson Act provides:

> The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision where:
>
> (1)  Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
>
> (2)  The order does not interfere with interstate commerce; and,
>
> (3)  The order has been made after reasonable notice and hearing; and,
>
> (4)  A plain, speedy and efficient remedy may be had in the courts of such State.

All four of the Act's criteria must be met for it to apply.  See Zucker, 373 F. Supp. at 751.

The district court concluded that all four elements were present in this case.  It held that the first requirement had been met because Freehold sought declaratory and injunctive relief on the basis that the BRC's Order was preempted by PURPA.  The court concluded, "[i]t is apparent that Freehold alleges jurisdiction on the basis that the Order is repugnant to the Federal Constitution since Freehold claims that the Supremacy Clause mandates that  the Order give way to PURPA."

The Johnson Act, however, requires that jurisdiction be based solely on the federal constitution.  Freehold's claim that the BRC's order is preempted does not rely solely on constitutional grounds, but also relies on PURPA, a federal statute.  In a similar case, the Eighth Circuit Court of Appeals held that the Johnson Act did not preclude federal jurisdiction over a claim that a public service commission's refusal of relief was in conflict with and preempted by the Federal Power Act.  The court reasoned:

> It is true, of course, that a federal statute overrides conflicting state law only because of the Supremacy Clause of the Federal Constitution.  In a sense, therefore, a preemption claim always asserts repugnance of state law to the Federal Constitution.  But such a claim does not usually require that the Constitution itself be interpreted.  Rather, the meaning of federal statutes and of state law must be explored, and the extent of any conflict ascertained. A state law struck down on the basis of preemption is perhaps more aptly labeled "unstatutory" than "unconstitutional."  In any case, whatever

> the theoretical arguments might be, all of
> the appellate authority in point of which we
> are aware upholds federal jurisdiction in
> utility rate cases where a substantial claim
> of federal statutory preemption is pleaded.

Arkansas Power & Light Co. v. Missouri Pub. Serv. Comm'n, 829

F.2d 1444, 1449 (8th Cir. 1987) (citations omitted).[5]

Thus, a statutorily-based preemption claim does not

provide a basis for invoking the Johnson Act to deprive a federal

court of jurisdiction. Because this case does not meet the first

prong of the Johnson Act analysis, it is not necessary for this

court to reach the remaining prongs.

C.

The district court further concluded that it lacked

subject matter jurisdiction because the PPA contains a choice of

forum provision providing that all disputes arising under the PPA

---

[5]. See also Hawaiian Tel. Co. v. Public Utils. Comm'n, 827 F.2d
1264, 1273 (9th Cir. 1987), cert. denied, 487 U.S. 1218 (1988);
New Orleans Pub. Serv., Inc. v. New Orleans, 782 F.2d 1236, 1242-
42 (5th Cir. 1986), withdrawn in part on other grounds, 798 F.2d
858 (5th Cir. 1986), cert. denied, 481 U.S. 1023 (1987); Aluminum
Co. of America v. Utilities Comm'n of North Carolina, 713 F.2d
1024, 1028 (4th Cir. 1983), cert. denied, 465 U.S. 1052 (1984);
International Bhd. of Elec. Workers, Local Union No. 1245 v.
Public Serv. Comm'n, 614 F.2d 206, 210 (9th Cir. 1980); Kentucky
West Virginia Gas Co. v. Pennsylvania Pub. Util. Comm'n, 620 F.
Supp. 1458, 1460-61 (M.D. Pa. 1985), rev'd on other grounds, 791
F.2d 1111 (3d Cir. 1986).

In Kentucky West Virginia, the defendant did not appeal the
district court's decision that the Johnson Act did not deprive it
of jurisdiction, so this court did not discuss the issue. The
cases cited by JCP&L are not to the contrary because none of them
involve preemption claims. Rather, they involve claims under 42
U.S.C. § 1983, the gravamen of which is a violation of federal
constitutional rights. The BRC has not raised the Johnson Act
issue on appeal.

would be resolved either by the BRC or by a New Jersey state court. The court reasoned:

> The parties provided that the PPA "shall be governed by and construed in accordance with the laws of the State of New Jersey applicable to contracts made and to be performed in that State, irrespective of the application of any conflicts of laws provisions." Further, the parties "agree[d] that all disputes arising under [the PPA] not resolved between the parties shall be decided by a petition to the BRC or a court of competent jurisdiction in the State of New Jersey and [Freehold] hereby submits itself to the jurisdiction of the BRC or such court for such purposes.

PURPA and its regulations do not prevent Freehold from waiving its statutory rights, see 18 C.F.R. § 292.301(b)(1), and thus Freehold may legally consent to have PPA disputes heard in state court. The choice of law and choice of forum provisions quoted by the district court, however, merely demonstrate that Freehold agreed to submit disputes arising under the PPA to either the BRC or a court of competent jurisdiction of the State of New Jersey, not that it gave up its right to be exempt from state laws and regulation. Freehold's complaint demonstrates that this is not an action to resolve a dispute under the PPA, but rather, a preemption claim against the BRC. Thus, the district court erred in holding that the PPA supports a finding that it lacks jurisdiction to hear this matter.[6]

---

[6]. On appeal, JCP&L also contends that a federal court should abstain from resolving the merits of this case even if it possesses subject matter jurisdiction. We disagree.

Abstention under Younger v. Harris, 401 U.S. 37 (1971), Burford v. Sun Oil Co., 319 U.S. 315 (1943) and Railroad Com. of Texas v.

III.

The defendants argue that if the federal courts have jurisdiction and abstention is inapplicable, this court should not address the merits of the preemption question, but should remand for consideration to the district court. JCP&L also argues that dismissal is mandated because Freehold's claim is moot and otherwise not ripe for adjudication. JCP&L and the BRC additionally assert that there are disputes over material facts that preclude any grant of summary judgment for Freehold and there are no "exceptional circumstances" justifying a resolution by this court of Freehold's motion for summary judgment.

On the other hand, Freehold asserts that its claim is ripe for adjudication as a matter of law because the BRC has been subjecting it to extensive state administrative, utility-type rate hearings and disclosure requirements since March 1994. Freehold vigorously argues that there are no factual issues to be

(..continued)
Pullman Co., 312 U.S. 496 (1941) is "an extraordinary and narrow exception to the district court's duty to adjudicate a controversy properly before it, justified only in the exceptional circumstances where resort to state proceedings clearly serves an important countervailing interest." United Services Auto. Asso. v. Muir, 792 F.2d 356, 360-61 (3d Cir. 1986), cert. denied, 479 U.S. 1031 (1987). The doctrine of discretionary abstention is predicated upon a federal policy of comity: federal courts of equity should exercise their discretionary power with proper consideration for the independence of state government in carrying out its governmental functions. In this case, however, our concern is with carrying out a federal statutory scheme promoting the development of alternative energy sources. The alleged intrusive action is not by the federal government, but, on the contrary, by a state regulatory agency. We conclude that abstention is not appropriate in this case and does not warrant any extended discussion.

considered in addressing the legal question of preemption, and that the appellees have had ample opportunity to make every argument that they could in defense against Freehold's claim that PURPA preempts the BRC's order.  Freehold notes that the only alleged factual dispute that the BRC and JCP&L have been able to claim before this court is whether the so-called "regulatory out" clause permits the BRC to modify Freehold's contractual rates.  Freehold, however, counters that the "regulatory-out" clause dispute requires no additional factfinding because it involves only a simple contract construction issue capable of resolution on the face of the PPA.  We agree; the clause is unambiguous and requires no extrinsic evidence for its construction.

Freehold also contends that there are exceptional circumstances here that mandate disposition by this court of the preemption issue without remand to the district court.  It claims that the cogeneration project has already been delayed by the time-consuming and costly proceedings before the BRC and that every day adds immeasurably to the project's cost.  Freehold argues that interest rates are rising, equipment and construction costs are increasing, and the legal costs of this action and the action before the BRC are escalating, while the revenues from the project, if constructed, are fixed for the life of the contract with JCP&L.

A.

In light of the ongoing proceedings before the BRC, we see no merit whatsoever to the argument that the issue is moot.  As to the question of ripeness, the Supreme Court stated in

Abbott Labs. v. Gardner, 387 U.S. 136 (1967), its leading discussion on the subject, and again reiterated in Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983), that the question of ripeness turns on "the fitness of the issue for judicial decision" and "the hardship to the parties of withholding court consideration." Abbott Labs., 387 U.S. at 149.

In Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio, No. 93-5559, 1994 WL 638864 (3d Cir. 1994), this court adopted the three part test from Step-Saver Data Systems, Inc. v. Wyse Technology, 912 F.2d 643, 647 (3d Cir. 1990), to determine whether we would engage in pre-enforcement review in the context of a declaratory judgment action: (1) the adversity of the parties' interests, (2) the conclusiveness of the judicial judgment, and (3) the utility of that judgment. Slip. op. at 14.

There can be no question here about the adversity of the parties' interests. JCP&L seeks to alter or modify the PPA it entered into with Freehold on March 26, 1992. The BRC, which had approved that contract consistent with PURPA's implementation requirements, subsequently directed Freehold and JCP&L to renegotiate the purchase price terms of the PPA or, in the alternative, to negotiate a buy out of the PPA. Freehold rejected a renegotiation of the purchase price terms of the PPA and a buyout by JCP&L. Since then, the BRC has commenced an extensive evidentiary proceeding to consider various courses of action, including the modification or revocation of its approval

of the PPA.  In this litigation and on appeal, Freehold's position is diametrically opposed to that of the defendants. Thus, there is an actual concrete controversy "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Salvation Army v. Department of Community Affairs, 919 F.2d 183, 192 (3d Cir. 1990) (quoting Steffel v. Thompson, 415 U.S. 452, 460 (1974)).

Furthermore, a judgment of this court will be conclusive.  It will determine whether the BRC proceedings conflict with or are expressly preempted as a matter of law by section 210(e) of PURPA and FERC's implementing rules.  Moreover, we are not persuaded that factual developments at the BRC proceedings would add anything to the legal construction of PURPA.

Finally, there remains for consideration the last of the Step-Saver three part test, the utility of such a judgment. Freehold convincingly contends that the BRC's proceeding is impeding Freehold's ability to obtain financing for its facility and jeopardizes not only the PPA, but also the project's financial viability.

Freehold also argues that additional delay may make it impossible to meet the construction and other deadlines contained in project contracts and permits.  This argument is very persuasive.  It takes but little experience in financial markets to realize that lending institutions will not lend a borrower large sums of money when the life of the underlying project is

threatened by extensive litigation.[7]  While the BRC litigation has been in process and this appeal pending, the Federal Reserve Bank has increased interest rates six times.[8]  Additional costs because of the delay -- not only in interest, but also in material and labor costs -- are irrecoverable under the terms of the PPA.  Moveover, Freehold cannot recover damages from the BRC if it prevails on the merits.

In Pacific Gas & Elec. Co., 461 U.S. 190, a question of preemption arose under circumstances where California's traditional role of regulating the generation and sale of electrical production challenged a complex federal scheme to promote the development of civilian nuclear energy.  The plaintiff utilities filed an action in the federal district court seeking a declaration that certain California regulations were invalid under the Supremacy Clause because they were preempted by the Atomic Energy Act of 1994.  Ripeness became an issue in the federal courts because the state administrative agency had not yet resolved the proceedings before it.  In disposing of the

---

[7].  In the submission to the BRC of the proposed joint modification agreement dated November 3, 1993, between Freehold and the Staff of the Board of Regulatory Commissioners, Freehold represented, and this representation was undisputed, that expeditious approval of the joint agreement "is necessary so that Freehold can go forward with the Project Financing.  The lending company will not make commitments until the issue of rate reduction is resolved."

[8].  See 80 Fed. Reserve Bulletin 610 and 913.  See also John E. Woodruff, Fed jolts interest rates up, The Baltimore Sun, Nov. 16, 1994, at 1A (discussing the Federal Reserve's increases in interest rates during 1994 and their effect on consumers and businesses).

ripeness issue, the Court examined the Abbott Labs. test of the "fitness of the issue for judicial decision" and "the hardship to the parties of withholding court consideration" and concluded that both factors favored a finding that the issue was ripe for adjudication.  It stated:

> The question of pre-emption is predominantly legal, and although it would be useful to have the benefit of California's interpretation of what constitutes a demonstrated technology or means for the disposal of high-level nuclear waste, resolution of the pre-emption issue need not await that development.  Moreover, postponement of decision would likely work substantial hardship on the utilities.

Id. at 201.  The Court noted that one does not have to await the ultimate impact of the threatened injury to obtain preventive relief.  The imminence of the injury is sufficient.

In Middle South Energy, Inc. v. Arkansas Pub. Serv. Comm'n, 772 F.2d 404 (8th Cir. 1985), cert. denied, 474 U.S. 1102 (1986), the complaint also raised a preemption challenge to state proceedings.  As in this case, the plaintiff did not challenge the state's ultimate substantive decision, but rather its authority to conduct proceedings to determine whether it should declare void ab initio certain contracts entered into by a utility pertaining to the purchase of power from, or payment for construction of, a nuclear power plant in Mississippi.  The court concluded that it "can hardly be doubted that a controversy sufficiently concrete for judicial review exists when the proceeding sought to be enjoined is already in progress."  Id. at 410-411.

We also conclude that the issue here is ripe for adjudication. The proceedings before the BRC have been ongoing for nearly one year. The interest that Freehold seeks to vindicate in this proceeding is the right to be free from "state laws . . . respecting the rates . . . of electric utilities" and from the expense, delay, and uncertainty inherent in the administration of such laws. If, as Freehold insists, the ongoing BRC proceedings constitute state regulation of utility rates and the burdens on Freehold occasioned by those proceedings are the kinds of burdens which Congress intended QFs to be spared, Congress' mandate would be frustrated if Freehold's right to judicial review were postponed. There is a concrete dispute that has already worked a severe hardship upon Freehold, and a determination of the legal issue of preemption need not await any further developments before the BRC.

B.

The BRC and JCP&L rely on Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 86 (3d Cir. 1989), for the proposition that this court generally has declined to address issues that were not decided by the trial court absent exceptional circumstances. In Equibank, however, we declined to address the merits because they had not been fully briefed by the parties and additional factfinding might have been required by the district court. In contrast, the original complaint in this case sought summary judgment on the sole legal question of whether PURPA preempted the BRC's order which directed a hearing on Freehold's previously approved rate. The parties have fully

and repeatedly briefed this issue in the district court where they also engaged in substantial oral argument on the merits. Moreover, as previously alluded to, the increasing financial pressure and rising costs imposed on Freehold because of the protracted delay, the escalating interest rates in the financial market, and the probability that the entire project will no longer be viable if we remand, constitute exceptional circumstances warranting our resolution of the preemption issue.[9]

## IV.

Our task is not to examine the merits underlying the controversy between JCP&L and Freehold over whether the PPA negotiated and executed in 1993 may be now revised and altered. No claim of fraud or mutual mistake of fact is alleged in the negotiation and execution of the PPA. We must determine only whether PURPA preempted the BRC order, dated January 5, 1994, directing the parties to renegotiate the purchase rate terms of the PPA or, in the alternative, to negotiate an appropriate

---

[9]. Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277 (3d Cir.), cert. den. sub nom. Altran Corp. v. Ford Motor Co., 112 S.Ct. 374 (1991), and Virgin Islands Conservation Soc. v. Virgin Islands Bd. of Land Use Appeals, 881 F.2d 28 (3d Cir. 1989), cited by JCP&L for the proposition that there are no "exceptional circumstances" justifying the resolution by this court of Freehold's motion for summary judgment are inapposite. In both of these cases, this court only decided that it would not consider an issue raised for the first time on appeal without compelling circumstances. In neither of these cases was the matter of compelling circumstances analyzed or briefed as they are here.

buyout of the PPA, failing which the BRC would and did commence proceedings now pending before it.  We conclude that it does.[10]

A state law may not only be preempted expressly by Congress, but whenever it conflicts with federal law.  Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982).  Under the Supremacy Clause of the United States Constitution, a federal agency acting within the scope of its congressionally delegated authority has the power to preempt state regulation and render unenforceable state or local laws which are otherwise not inconsistent with federal law.  Louisiana Public Service Com. v. FCC, 476 U.S. 355, 368-69 (1986).   Of course, the application of the preemption doctrine requires a determination of congressional intent in enacting a federal law.  That intent is not necessarily dependent on express congressional authorization to nullify or render partially or wholly unenforceable an inconsistent state law or regulation.  It also occurs "where Congress has legislated comprehensively, thus occupying the entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress."  Id. at 368-69 (citation omitted).

---

[10].  The district court held that the dispute before the BRC arises under the PPA and presumed that it was not subject to preemption.  Freehold, however, has no dispute under the PPA; it filed a complaint in the district court to protect the terms and integrity of the PPA from unwarranted intrusion by the BRC.  The BRC is attempting to alter the terms of the PPA after having fully approved it in a final and non-appealable order.  We do not believe that Freehold's claim can correctly be characterized as a dispute under the PPA.

As we have previously stated in this opinion, Congress modified the Federal Power Act, which gave the FERC exclusive authority to regulate public utilities engaged in the sale of electric power at wholesale in interstate commerce, by enacting PURPA as part of a comprehensive legislative effort to solve a nationwide energy crisis and thus reduce the nation's dependence on fossil fuels. In PURPA, Congress directed the FERC to promulgate regulations requiring public utilities to buy electric energy from and to sell electric energy to qualifying cogeneration facilities. After extensive hearings, Congress concluded that the energy problem was nationwide in scope and therefore required "federal standards regarding retail sale of electricity, as well as federal attempts to encourage conservation and make efficient use of scarce energy resources." FERC v. Mississippi, 456 U.S. at 757.

Section 210 of PURPA sets forth the benefit to which QFs are entitled. It creates a market for their energy by requiring that the FERC establish regulations that obligate public utilities to sell electric energy to and purchase electric energy from QFs. 16 U.S.C. § 824a-3(a). Section 210(b) requires the FERC to promulgate regulations to ensure that the rates for these purchases "shall be just and reasonable to the electric consumers of the electric utility in the public interest." These rates may not exceed the incremental cost to the utility of purchasing alternative electric energy. 16 U.S.C. § 824a-3(b).[11]

_____

[11]. Where, as here, the PPA has a long-term, fixed price, tension may arise between this consumer protective provision of

Pursuant to PURPA's requirements, the FERC issued regulations which define the minimum operating and efficiency standards that cogeneration facilities must meet and the benefits to which they are entitled.  18 C.F.R. §§ 292.101–.211.  The regulations also authorize the FERC to revoke QF status for non-compliance with its application and empower the FERC to waive operating and efficiency standards upon a showing that the QF produces significant energy savings.  18 C.F.R. § 292.205(c).  Additionally, the regulations address the purchase of energy by utilities, and the cost to be paid to the QF supplying the energy and guidelines for calculating such costs.  18 C.F.R. § 292.301–.308.  Thus, PURPA and the implementing regulations establish an extensive federal system to encourage and regulate the sale of electrical energy by QFs.

JCP&L claims that it and Freehold voluntarily agreed to the BRC's continuing jurisdiction over the PPA and the rates charged by Freehold thereunder.  This argument is based upon the BRC's unsuccessful effort in late 1993 to formulate a joint agreement between the parties modifying the PPA.  JCP&L also asserts that in the course of the ongoing proceeding initiated by the BRC to review the PPA, the BRC is reviewing documentary evidence and testimony concerning the meaning of the PPA's "regulatory-out" clause.  JCP&L maintains that the regulatory-out

(..continued)
PURPA and the FERC regulation permitting the parties to hold incremental avoidable cost at the level it has on the date the PPA is effective.  Whatever problem this may create is, however, a matter for FERC, not the BRC.  See also infra p. 30.

clause grants the BRC continuing jurisdiction over rates. Finally, JCP&L argues that PURPA contains no express preemption claims and that implied preemption is not to be lightly presumed. In fact, it argues that there is a presumption against finding preemption of state law in areas traditionally regulated by the states.

Although the states are required under the federal statutory scheme to implement the federal rules, section 210(e) of PURPA requires that the FERC prescribe rules exempting QFs "from state laws and regulations respecting the rates, or respecting the financial or organizational regulation of electric utilities, or from any construction of the foregoing, if the Commission determines such exemption is necessary to encourage cogeneration and small power production."  16 U.S.C. § 824a-3(a)(1).  As discussed earlier, the FERC promulgated regulations, pursuant to section 210(e)(1) of PURPA, exempting QFs from various federal and state regulatory requirements.

The BRC concedes that in adopting the regulation exempting cogenerators from state utility regulation, the FERC described the exemption as broad.  It takes heart, however, in FERC language stating that the exemption is "not intended to divest a State regulatory agency of its authority to review contracts for purchases as part of its regulation of electric utilities."  45 Fed. Reg. 12,233 (Feb. 25, 1980).  This misunderstands the interplay between sections 210(a) and 210(e). There is no dispute here that section 210(f) gives state regulatory authorities power to implement the requirements of

section 210(a) and the relevant regulations. In fact, both section 210(e)(3) and the applicable regulation, 18 C.F.R. § 292.602(c)(2), expressly limit the exemptions from state law that QFs enjoy under § 210(e): QFs simply are not exempt from state laws and regulations enacted pursuant to § 210(f) and, with it, § 210(a).

Thus, if a case concerns implementation procedures contemplated by § 210(f), then the action is properly covered by § 210(g), and, therefore, federal jurisdiction would be improper. Here, on the other hand, the BRC's implementation of FERC's § 210(a)-type regulations ended with BRC's July 8, 1992 approval of the PPA. The present attempt to either modify the PPA or revoke BRC approval is "utility-type" regulation -- exactly the type of regulation from which Freehold is immune under § 210(e). As the explanatory note states, the regulations do not disturb the authority of state regulatory agencies "to review contracts for purchases" so long as those regulations are "consistent with the terms, policies and practices of sections 210 and 201 of PURPA and [FERC's] implementing regulations. If the authority or its exercise is in conflict, . . . the State must yield to the Federal requirements."

Absent legislative restriction, the BRC also asserts, reconsideration of its prior approval of the PPA is inherent in the authority of all administrative agencies and not necessarily a characteristic unique to rate-making bodies. However, in this instance, there is specific federal statutory legislation, PURPA, that bars reconsideration of the prior approval of the PPA at

least absent some basis in the law of contracts for setting aside the PPA. No such basis is referred to here. Based on the overall scheme of PURPA and its stated goal, and especially section 210(e) and the implementing rules promulgated by the FERC, we hold that Congress intended to exempt qualified cogenerators from state and federal utility rate regulations.

Two recent cases support our conclusion. In Independent Energy Producers, 36 F.3d 848, the Energy Producers sought an injunction in the federal district court to prevent the California Public Utilities Commission ("CPUC") from implementing an order which delegated to the defendant-utilities the authority to enforce federal operating and efficiency requirements set out in PURPA and in the regulations promulgated by the FERC. As in this case, the plaintiff QF and the utilities entered into contracts for the sale and purchase of electric energy. The contracts contained standardized terms and the rates to be paid the QFs. In 1991, the utilities and the CPUC created a program which authorized the utilities to monitor the compliance with federal operating and efficiency standards by the QFs with which they had contracts. If a utility determined that a QF did not meet federal operating and efficiency standards, it was authorized to suspend payment of the rates specified in the contract and substitute a lower alternative rate. Independent Energy Producers challenged this program, contending that the FERC's authority is exclusive and the state program is preempted by federal law. The district court disagreed and held there was no preemption.

The court of appeals reversed. It concluded that the FERC regulations carry out the statutory scheme reposed in its exclusive authority to make QF determinations for the revocation of QF status or waive compliance with QF standards, they nowhere "contemplate a role for the state in setting QF standards or determining QF status." Id. at 854. For reasons of policy, it held that a "uniform federal decision maker is necessary" in the public interest and that the CPUC program was preempted by federal law. Id.

One of the issues raised in Smith Cogeneration, Inc. v. Corporation Comm'n, 863 P.2d 1227 (Okla. 1993), is even more analogous to this case. A rule of the Oklahoma Corporation Commission required QFs and electrical utilities to include in their non-negotiated cogeneration purchase contracts a notice provision allowing reconsideration and modification by the Corporation Commission of avoided costs after the contract had been agreed upon. The cogenerator argued that the Corporation Commission rule directly conflicted with PURPA and the FERC regulations, discouraged cogeneration, and was preempted by federal law. Although the cogenerator acknowledged that states have broad authority to implement PURPA, it insisted that any utility-type regulation over cogeneration contracts directly conflicted with PURPA.

As Freehold does here, the cogenerator in Smith argued that any attempt to revisit a cogeneration contract, as a result of changed circumstances, deprives QFs of the benefits of the bargain and that the state rule, unless waived, stands as a

direct obstruction to obtain the necessary financing for the project. The Corporation Commission and the utilities argued to the contrary.

The Oklahoma court, after examining the preamble to the FERC regulations and PURPA, concluded that reconsideration of long term contracts with established estimated costs imposes utility-type regulations over QFs. "PURPA and FERC regulations seek to prevent reconsideration of such contracts. The legislative history behind PURPA confirms that Congress did not intend to impose traditional utility type rate-making concepts on sales by qualifying facilities to utilities." Id. at 1240-1241. Accordingly, the court held that PURPA and FERC regulations preempted the State Commission rule.

JCP&L attempts to distinguish this case from Smith on the ground that the challenged rule in Smith would impact on financing, but that in this case, the BRC's "pre-financing review of the PPA will have no such impact." Such a distinction is illusory. The Oklahoma court did not rest its preemption holding merely on the impact of the Commission rule on financing, but primarily on the obligation and rights of the parties under a negotiated and executed contract. Here, the facts favor Freehold more strongly than they did the cogenerator in Smith. In Smith, the cogenerator did not yet have a signed contract; Freehold does and the preemption issue is precisely the same. Besides, we cannot disregard the impact on cogeneration financing if a purchase power agreement is at any time in the future subject to the arbitrary reconsideration by a state utility regulatory body.

Finally, the defendants maintain that preemption is inappropriate because JCP&L and Freehold voluntarily agreed to exempt the PPA from PURPA. They note correctly that FERC regulations specifically contemplate voluntary agreements outside of PURPA's umbrella. See 18 C.F.R. § 292.301(b); see also American Paper Institute, Inc., 461 U.S. at 416 (stating that "a qualifying facility and a utility may negotiate a contract" that constitutes "a waiver" of PURPA). They claim that Freehold, in a "regulatory-out" clause,[12] agreed to waive its section 210(e) and

_____

12. The "regulatory-out" clause provides in pertinent part:

> 20.2(a)  The parties recognize and acknowledge that this agreement and the rates to be paid to the Seller [Freehold] for energy and capacity for the Facility are premised upon and subject to the Company's [JCP&L] continuing ability to timely and fully recover from its customers all such costs and charges paid to the Seller hereunder for energy and capacity throughout the term hereof. Consequently, in the event that the BRC, the FERC or any legislative, judicial, administrative or other governmental agency having jurisdiction over the parties, . . . should disallow in whole or in part or otherwise impair the full and timely recovery by the Company from its customers of any energy and capacity payments made or to be made to the Seller hereunder, then, at the option of the Seller, (i) the parties hereto shall promptly thereafter commence negotiations to approximately amend this Agreement to reduce the rates to be paid by the Company hereunder for energy and capacity to such rates as the BRC or such other governmental agency exercising jurisdiction shall have authorized the Company to recover through operation of its Levelized Energy Adjustment Clause ("LEAC") . . . on a full and timely basis or (ii) upon thirty (30) days prior written notice to the

18 C.F.R. § 292.602(c)(1) rights to be free from state rate regulation or law.

As we have noted, insofar as the issues in this case are concerned, we find the "regulatory-out" clause unambiguous. It merely describes what would happen in the event that during the 20-year contract term JCP&L should for any reason lose its right to pass costs on to its ratepayers. When this clause was agreed upon, the parties clearly did not expect that this right could be lost as a result of BRC action absent some change in the governing law.[13] But the important aspect for present purposes is that this clause does not purport to confer on the BRC any jurisdiction it would not otherwise have. In particular, it reflects no intent on the part of Freehold to surrender any of the protection from state rate regulation conferred upon it by § 210(a).

V.

In summary, we conclude that the district court had subject matter jurisdiction to consider Freehold's claims and

(..continued)
> Company, the Seller may terminate this
> Agreement and neither party shall have any
> further liability or obligation hereunder
> except for amounts due prior to the date of
> termination . . . .

[13]. In the BRC's 1992 order approving the PPA, the BRC committed itself and its successors to "allow JCP&L to flow-through and/or fully and timely recover the rates specified in [the PPA] and the costs resulting therefrom . . . ."

A July 1, 1988, Stipulation and Settlement relied upon by the BRC in approving the present PPA states that the BRC will not readjust contract rates or preclude flow through.

that the jurisdictional limits of section 210(g) of PURPA did not bar jurisdiction of this action.  We also hold that the district court erred in concluding that the Johnson Act precludes federal jurisdiction and that Freehold's claim involves solely a contractual dispute subject to the jurisdiction of the state utility regulatory agency under the choice of law and forum provisions of the PPA.  We reject the argument that any of the abstention doctrines apply in any manner to these proceedings.  Finally, we hold that once the BRC approved the power purchase agreement between Freehold and JCP&L on the ground that the rates were consistent with avoided cost, just, reasonably, and prudentially incurred, any action or order by the BRC to reconsider its approval or to deny the passage of those rates to JCP&L's consumers under purported state authority was preempted by federal law.

The order of the district court will be reversed and the case remanded with direction to enter summary judgment in favor of the appellant and for such further proceedings as are consistent with this opinion.  Costs taxed against the appellees.