NIAGARA MOHAWK POWER CORPORATION, Plaintiff–Appellant,

New York State Electric & Gas Corporation, Intervenor–Plaintiff,

v.

FEDERAL ENERGY REGULATORY COMMISSION, New York State Public Service Commission, Harold A. Jerry, Jr., Lisa Rosenblum, William D. Cotter, Raymond O'Connor, and John O'Mara, Defendants–Appellees,

Independent Power Producers of New York, Inc., Intervenor–Defendant–Appellee,

Cogen Energy Technology L.P., American Ref-Fuel Company, Power City Partners, L.P., AG–Energy, L.P., Seneca Power Partners, L.P., Sterling Power Partners, L.P., P & N Partners, L.P. (Collectively, the "Sithe Intervenors"), Onondaga Cogeneration Limited Partnership, and Project Orange Associates, L.P. (Collectively, the "Syracuse Intervenors"), and United Development Group–Niagara, L.P. ("UDG"), Intervenors–Defendants.

Docket No. 01–6215.

United States Court of Appeals, Second Circuit.

Argued: June 19, 2002.

Decided: Sept. 25, 2002.

Edward Berlin (Robert V. Zener, on the brief), Swidler Berlin Shereff Friedman, LLP, Washington, DC, for Plaintiff–Appellant Niagara Mohawk Power Corporation.

Beth G. Pacella (Cynthia A. Marlette, Dennis Lane, on the brief), Federal Energy Regulatory Commission, Washington, DC, for Defendant–Appellee Federal Energy Regulatory Commission.

Jonathan D. Feinberg (Lawrence G. Malone, on the brief), Public Service Commission of the State of New York, Albany, NY, for Defendant–Appellee New York State Public Service Commission.

Howard J. Read (Steven D. Wilson, on the brief), Read and Laniado, LLP, Albany, NY, for Intervenor–Defendant–Appellee Independent Power Producers of New York, Inc.

Before CALABRESI, SACK, and PARKER, Jr., Circuit Judges.

PARKER, Jr., Circuit Judge.

Plaintiff Niagara Mohawk Power Corporation ("Niagara") is a utility engaged in the business of generating and distributing electric power to consumers in the State of New York. Seeking relief from a number of long-term contracts [1] that it had entered into with qualifying cogeneration facilities ("QFs") [2], Niagara sued the Federal Energy Regulatory Commission ("FERC"), the New York State Public Service Commission (the "PSC"), and the individual commissioners of the PSC. Niagara's claims derive in large part from the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C. § 2601 *et seq.*, which Congress enacted "to promote long-term economic growth by reducing the nation's reliance on oil and gas, to encourage the development of alternative energy sources and thereby to combat a nation-wide energy crisis." *Niagara Mohawk Power Corp. v. Fed. Energy Regulatory Comm'n,* 162 F.Supp.2d 107, 110 (N.D.N.Y.2001) *("Niagara ").*

Section 210 of PURPA's Title II, 16 U.S.C. § 824a–3, encourages the development of cogeneration and small power production facilities, which Congress believed would reduce the demand for traditional fossil fuels. Section 210(a), 16 U.S.C. § 824a–3(a), directs FERC, in consultation with state regulatory authorities, to promulgate rules necessary to encourage such power production, including rules requiring utilities to offer to sell electricity to, and purchase electricity from, QFs. Section 210(f)(1) obligates state regulatory agencies such as the PSC to implement FERC rules through their own rulemaking, in particular those pertaining to electric utilities' obligation to purchase power from QFs. 16 U.S.C. § 824a–3(f)(1) (2000).

PURPA and its regulations prohibit FERC from "provid[ing] for a rate which exceeds the incremental cost to the electric utility of alternative electric energy." 16 U.S.C. § 824a–3(b). An electric utility's incremental cost is the cost that the utility would incur in generating the electric energy itself or purchasing it from another source. 16 U.S.C. § 824a–3(d). Incremental cost is also referred to as avoided cost. 18 C.F.R. § 292.101(b)(6) (2001).

In 1980, the New York legislature enacted New York Public Service Law § 66–c, which provided that the PSC would require state-regulated electric utilities to

**1.** These long-term contracts are known as "power purchase agreements," or "PPAs."

**2.** A "cogeneration facility" is:
a facility which produces—
(i) electric energy, and
(ii) steam or forms of useful energy (such as heat) which are used for industrial, commercial, heating, or cooling purposes.
16 U.S.C. § 796(18)(A) (2000). A "qualifying cogeneration facility" is:
a cogeneration facility which—

(i) [FERC] determines, by rule, meets such requirements (including requirements respecting minimum size, fuel use, and fuel efficiency) as [FERC] may, by rule, prescribe; and
(ii) is owned by a person not primarily engaged in the generation or sale of electric power (other than electric power solely from cogeneration facilities or small power production facilities).
*Id.* § 796(18)(B).

enter into agreements for the purchase of electricity from QFs. The PSC was charged with overseeing the contracting process, including approval of the contracts and setting power purchase rates. New York initially did not adopt PURPA's "avoided cost" ceiling for electricity purchases. In 1981, section 66–c was amended to require the PSC to establish a minimum sales price of at least six cents per kilowatt hour for power purchased from state qualifying QFs. This amendment is commonly referred to as the "Six–Cent Law." The New York legislature amended section 66–c again in 1992, partially repealing the Six–Cent Law. The 1992 amendment, however, preserved the six-cent minimum rate with respect to certain contracts executed and filed with the PSC on or before June 26, 1992, including the agreements at issue here. N.Y. Pub. Serv. Law § 66–c(2) (McKinney 2000).

Niagara initiated this action in May 1995. Its First Amended Complaint alleged that the incremental cost limitation contained in PURPA and FERC implementing regulations preempts both the New York legislature's ability to enact the Six–Cent Law and the PSC's ability to enforce it. The complaint alleged one claim against the PSC and its commissioners, for violations of PURPA, PURPA regulations, and the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, and one claim against FERC, for violations of PURPA and the Administrative Procedure Act (the "APA"), 5 U.S.C. § 551 *et seq.*

Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6), arguing that there was no federal subject matter jurisdiction over Niagara's claims and that, in any event, Niagara failed to state a claim upon which relief could be granted. The District Court (Norman A. Mordue, *Judge*) granted defendants' motion and dismissed the complaint in its entirety, in part for a lack of subject matter jurisdiction and in part for failure to state a claim. *Niagara*, 162 F.Supp.2d 107. For a detailed discussion of the factual background and procedural history of this case, see the District Court's thorough opinion. *Niagara*, 162 F.Supp.2d at 110–24.

We affirm the District Court's dismissal of Niagara's complaint, albeit on slightly different reasoning. We agree with the District Court's analysis with respect to the claims against FERC, which were properly dismissed with prejudice, and the PURPA claim against the PSC and its commissioners, which was properly dismissed for lack of subject matter jurisdiction because of Niagara's failure to exhaust its administrative remedy by pursuing the claim with FERC in the first instance. We disagree, however, with the District Court's analysis with respect to the Supremacy Clause claim against the PSC and its commissioners, which also should have been dismissed for lack of subject matter jurisdiction because of Niagara's failure to exhaust its administrative remedy.

## DISCUSSION

We review the District Court's dismissal of Niagara's complaint *de novo*, accepting all factual allegations contained in the complaint as true and drawing all reasonable inferences in Niagara's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). Dismissal is appropriate only if it appears beyond doubt that Niagara can prove no set of facts in support of its claim which would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## I. Claims Against FERC

Niagara alleges two claims against FERC, one for violation of PURPA and

one for violation of the APA. While ostensibly independent of each other, these claims share a common legal theory: that "FERC's refusal to apply the incremental and avoided cost limitations of PURPA and its regulations under PURPA to Niagara's existing QF contracts constitutes a violation of [both PURPA and the APA]." (First Am. Compl. for Declaratory and Injunctive Relief ("Compl.") ¶ 38.) For the reasons discussed below, we believe that the District Court properly dismissed both of these claims. *See Niagara,* 162 F.Supp.2d at 124–34.

### A. PURPA Claim

■ As the District Court held, Niagara cannot maintain a claim against FERC under PURPA for the simple reason that no such claim exists. The only private right of action under PURPA arises from § 210(h)(2)(B) of that statute. *See* 16 U.S.C. § 824a–3(h)(2)(B). That subsection permits "[a]ny electric utility, qualifying cogenerator, or qualifying small power producer" to petition FERC to enforce PURPA "against a State regulatory authority or nonregulated electric utility" and, if FERC does not initiate an enforcement action, to bring an action in district court "to require such State regulatory authority or nonregulated electric utility" to comply with PURPA. *Id.* Because FERC is neither a "State regulatory authority" nor a "nonregulated electric utility," Niagara may not sue FERC under PURPA. *See* Compl. ¶ 9 (stating that "[FERC] is an agency of the United States"); *see also N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.,* 117 F.Supp.2d 211, 255 (N.D.N.Y.2000) ("PSC cannot sue FERC under the guise of a Section 210(h) enforcement action."),

*aff'd,* 267 F.3d 128 (2d Cir.2001) ("*NY-SEG* "). Accordingly, the District Court correctly dismissed this claim.

### B. APA Claim

■ Niagara also asserts a claim against FERC under the APA. In order to pursue such a claim, Niagara must show that either (1) the FERC action of which Niagara seeks judicial review is "made reviewable by statute" or (2) "there is no other adequate remedy in a court." 5 U.S.C. § 704 (2000). Niagara does not argue that any statute provides for judicial review of FERC decisions interpreting PURPA and, indeed, no statute so provides. Niagara does argue, however, that it has no other adequate judicial remedy. In particular, Niagara argues that unless it can obtain judicial review of FERC's ruling under the APA in an action against FERC, "its remedy against the PSC is not adequate." (Br. for Pl.-Appellant at 51.) We disagree. As the District Court noted, the Court of Appeals for the D.C. Circuit ruled, in a previous stage of this litigation, that a district court "is perfectly capable" of "determin[ing] whether [FERC's] interpretation of [PURPA] is reasonable ... even if [FERC] chooses not to intervene." *Niagara,* 162 F.Supp.2d at 126 (quoting *Niagara Mohawk Power Corp. v. Fed. Energy Regulatory Comm'n,* 117 F.3d 1485, 1488 (D.C.Cir.1997)) (alteration in original).[3]

Moreover, the complaint itself acknowledged that Niagara may obtain complete relief with respect to all of the contracts at issue if "the minimum rate provision of the Six–Cent law" is declared invalid and Niagara is permitted to "withdraw its SC–6

---

3. The D.C. Circuit held that it lacked jurisdiction to review two FERC declaratory orders interpreting PURPA because the orders, which had not been the subject of a district court enforcement action, "do[ ] nothing

more than state how the FERC interprets its own regulations" and "ha[ve] no legally binding effect." *Niagara,* 117 F.3d at 1488, 1489 (quotation marks and citation omitted).

tariff and file a substitute tariff eliminating any reference to the rate established by the Six–Cent Law." (Compl. ¶ 36; *see also* Br. for Pl.-Appellant at 17 (stating that "adequate relief could be obtained by a declaration of the invalidity of the Six–Cent Law and an order directing the PSC to accept a tariff filing eliminating reference to the six-cent rate").) Niagara does not explain, and we cannot see, why FERC's absence from the litigation would prevent Niagara from obtaining either the declaratory or the injunctive relief that it seeks. Thus, because Niagara has an adequate legal remedy against the PSC, it cannot maintain an APA claim against FERC. *See N.Y. City Employees' Ret. Sys. v. Sec. & Exch. Comm'n,* 45 F.3d 7, 14 (2d Cir.1995).

## II. Claims Against the PSC and Its Commissioners

Niagara asserts two claims against the PSC and its commissioners, alleging that these defendants have violated both PURPA (and attendant regulations) and the Supremacy Clause. While these two claims have different labels, however, they share identical legal and factual theories. Niagara alleges, "The PSC, in the ways described, has violated the incremental cost limitation of PURPA, 16 U.S.C. § 824a–3(b), (d), the avoided cost limitation of the regulations issued by FERC pursuant to PURPA, 18 C.F.R. §§ 292.340(a)(2) [sic], 292.101(b)(6), and the Supremacy Clause of the Constitution, Art. VI, Cl. 2." (Compl.¶ 33.) The District Court assumed that "Niagara's Supremacy Clause claim is based on PSC's continued implementation of the Six–Cent Law as grandfathered by amendments to the N.Y. Pub. Serv. Law in spite of the avoided cost limitation set forth in PURPA." *Niagara,* 162 F.Supp.2d at 136 n. 43. The court nonetheless dismissed these claims on different grounds.

The court dismissed Niagara's PURPA claim because it "has no subject matter jurisdiction over any claim against PSC based on PURPA in the absence of proof that Niagara complied with the jurisdictional pre-requisites of [§ 210(h)(2)(B)]" by first petitioning FERC for relief. *Niagara,* 162 F.Supp.2d at 136. With respect to the Supremacy Clause claim, however, the District Court found, without explanation, that Niagara need not comply with § 210(h)(2)(B). *Id.* Instead, the District Court found that res judicata barred the claim against the PSC, *id.* at 140–43, and that the PSC's inability to alter previously approved contracts mandated dismissal of the claim against the individual commissioners, *id.* at 144–45. We affirm the dismissal of Niagara's PURPA and Supremacy Clause claims against the PSC and its commissioners, but we conclude that the District Court should not have treated them as legally distinct claims.

### A. Exhaustion of Administrative Remedy

As discussed in section I. A., *supra,* PURPA § 210(h)(2)(B) permits an electric utility such as Niagara to maintain a private action against a state regulatory authority such as the PSC, provided the utility first satisfies certain administrative prerequisites. 16 U.S.C. § 824a–3(h)(2)(B). Before Niagara may sue the PSC in district court for a violation of PURPA, Niagara must first petition FERC to enforce PURPA against the PSC. *Id.* If FERC does not initiate an enforcement action against the PSC within sixty days following Niagara's petition, Niagara may bring an action in district court to require the PSC to comply with PURPA. *Id.* Referring to the requirements of § 210(h)(2)(B), the District Court stated, "It is undisputed that Niagara did not follow this procedure prior to commencement of the

present action." *Niagara,* 162 F.Supp.2d at 135. On appeal, Niagara does not argue that it satisfied the administrative exhaustion requirement. We hold that the District Court correctly dismissed Niagara's PURPA claim as against the PSC and its commissioners for lack of subject matter jurisdiction because of Niagara's failure to exhaust its administrative remedy by petitioning FERC to bring an enforcement action against the PSC in the first instance.

■ The District Court found that Niagara was not required to comply with the exhaustion requirement of § 210(h)(2)(B) before bringing its Supremacy Clause claim. *Niagara,* 162 F.Supp.2d at 136. We disagree. Niagara's Supremacy Clause claim against the PSC and its commissioners appears to be identical to its PURPA claim against those defendants, only under a different name. Indeed, Niagara frames the two claims together in its complaint as "Count I (Against PSC and Commissioners for Violation of PURPA, PURPA regulations and Supremacy Clause)." (Compl.¶¶ 32–36.) Both claims present the same legal theory, that the PSC violates PURPA and FERC's avoided cost regulation by enforcing New York's grandfathered Six–Cent law, and both claims seek the same relief, a declaration that the minimum rate provision of the Six–Cent Law is invalid and an injunction permitting Niagara to file a new SC–6 tariff eliminating any reference to the six-cent rate. Indeed, it is not clear from Niagara's complaint that it has even alleged a separate Supremacy Clause claim at all. Rather, it appears that Niagara has alleged one claim against the PSC and its commissioners, alleging that they have violated PURPA and related implementing regulations, and attached two labels to that claim. Niagara cannot avoid the administrative exhaustion requirement of § 210(h)(2)(B) simply by restating its PURPA claim under a different heading.

Accordingly, because Niagara has not satisfied this requirement, its claims against the PSC and its commissioners should have been dismissed for lack of subject matter jurisdiction.

In arguing that it has asserted a viable Supremacy Clause claim, Niagara relies upon the decision of the Third Circuit in *Freehold Cogeneration Associates v. Board of Regulatory Commissioners of New Jersey,* 44 F.3d 1178 (3d Cir.1995). There, the court found that Freehold, a New Jersey QF, had properly asserted a Supremacy Clause claim against the state power authority, when the power authority had sought to force it to modify the purchase rate term in one of its contracts. *Freehold* is inapposite here, however, because it did not involve a state rate-setting regulation promulgated pursuant to § 210(f), the provision that § 210(h)(2)(B) petitions are intended to enforce. *Id.* at 1184–85 & n. 4; *see* § 210(h)(2)(B) ("Any electric utility, qualifying cogenerator, or qualifying small power producer may petition the Commission to enforce the requirements of subsection (f) of this section . . . ."). NYSEG, in which the court found jurisdiction over a Supremacy Clause claim, is also distinguishable because the plaintiff in NYSEG had exhausted its administrative remedies. 117 F.Supp.2d at 224–25, 242–43.

In addition to the statutory requirement, there is also a prudential reason for requiring Niagara to exhaust its administrative remedy. Niagara objects to FERC's decision to apply its ruling in *Connecticut Light & Power Co.,* 70 FERC 61,012, 1995 WL 9931 (1995) (holding that state regulatory agencies may not set purchase rates for alternative electric energy from cogenerators above the traditional utility's avoided cost), to prospective contracts only. After holding that PURPA preempted a Connecticut statute requiring

rates in excess of avoided cost, FERC stated that it would "not entertain requests as a consequence of this order asking us to invalidate on this basis other, pre-existing contracts where the avoided cost issue could have been raised." *Id.*, 1995 WL 9931 at *8. Because Niagara asserts that the contracts at issue would not have to be invalidated to grant the relief that it seeks, this action is premature, for we do not yet know what rule FERC intends to apply to contracts whose rate provisions can be modified without invalidating them.

### B. Other Issues

The District Court dismissed Niagara's Supremacy Clause claim as against the PSC on the basis of res judicata, *Niagara*, 162 F.Supp.2d at 142–43, and it dismissed Niagara's Supremacy Clause claim as against the individual PSC commissioners on the basis of the PSC's inability to alter previously approved contracts, *Niagara*, 162 F.Supp.2d at 144–45. We have strong doubts about the correctness of the District Court's conclusions on both of these issues, and we would not wish later district courts to rely on these holdings. Nevertheless, because decisions on these matters are not required to resolve the case before us, we take no final stand on these points.

### CONCLUSION

Accordingly, we affirm the judgment of the District Court.

